# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JGSM ENTERTAINMENT CORP., a Delaware Corporation,<br><br>Plaintiff,<br>v.<br><br>TWG MANAGEMENT, LLC, a Nevada limited liability company; TOM WACKMAN, an individual resident of Wisconsin, et al.,<br><br>Defendants. | Case No. 2:17-cv-02915-KJD-NJK<br><br>**<u>ORDER</u>** |

Presently before the Court is Defendant, TWG Management, LLC's Motion to Dismiss for Improper Venue, or, in the Alternative, To Transfer Venue (#4), to which Plaintiff JGSM Entertainment Corp. responded (#7) and TWG replied (#18). Also before the Court is Tom Wackman's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (#30) to which JGSM responded (#31) and Wackman replied (#32). Because the Court finds that Wackman has sufficient minimum contacts with the forum to confer personal jurisdiction, it denies Wackman's motion to dismiss. Additionally, because the Court finds that Nevada is an acceptable venue, it denies his and TWG's motions to dismiss or transfer venue.[1]

---

[1] Also before the Court are Defendant TWG Management, LLC's Motion to Extend Time

I. Background

This matter arises out of a joint venture to renovate and operate a nightclub in Chicago, Illinois. In 2013, Defendant TWG Management, LLC entered into an agreement with 157 Ontario, Inc. (not a party to this action) to renovate a property located at 157 Ontario Street in Chicago, Illinois. TWG is a Nevada limited liability company, and Defendant Tom Wackman is its sole member. About two years after the initial agreement between TWG and 157 Ontario, TWG sought additional funding for the Ontario Street project. Wackman connected with Plaintiff JGSM Entertainment Corp. through Ronn Nicolli who was a Nevada resident and mutual acquaintance of Wackman and Claudio Gonzalez, JGSM's sole shareholder.

How and where the parties met is hotly contested. According to JGSM, Wackman targeted Gonzalez based on his experience and contacts in the hospitality and night life industry. It claims that Wackman traveled to Las Vegas in September of 2015 to solicit investment from JGSM to fund the Ontario Street renovation. The parties allegedly met at a Las Vegas restaurant in September 2015 to discuss the project and negotiate investment. Gonzalez was present on behalf of JGSM. Also present was Yannick Mugnier—a Nevada resident—and Wackman. During the meeting, the parties came to an oral agreement whereby JGSM agreed to invest in the Ontario Street project, share in the management of the property, and receive future income from the property. JGSM submits sworn declarations by Gonzalez and Mugnier to support its claims.

Wackman insists that his 2015 trip to Las Vegas was purely social. He argues that he never discussed the project in Las Vegas and disputes JGSM's declarations. Additionally, Wackman claims that negotiations between the parties occurred by phone or email and any

---

(First Request) to Reply in Support of Motion to Dismiss (#12) and Plaintiff JGSM Entertainment Corp.'s Motion to Strike Reply (#21). Having reviewed both motions, the Court hereby grants TWG's Motion to Extend Time (#12). As a result, the Court dismisses JGSM's Motion to Strike (#21) as moot.

2

meetings took place in Chicago. In addition to sworn declarations, Wackman submits copies of text messages between himself and Mugnier. These text messages suggest that Mugnier was in Chicago to meet with Wackman multiple times in the Fall of 2015 and throughout the year in 2016.

What is clear is that the parties were in contact in the Fall of 2015. The parties agree that Gonzalez and Wackman discussed investment in the Ontario Street project. They also agree that they communicated via telephone and email. Finally, in December, 2015, Wackman formed a Nevada company titled Last Disco Chicago, LLC to manage the parties' investments and progress of the ongoing Ontario Street project.

Progress ceased after difficulties arose between the parties concerning who owned the property and whether its liquor licenses could be efficiently transferred. The parties attempted to remedy the dispute but were unsuccessful. In December 2016, Wackman recorded a mechanic's lien on the Ontario Street property with the Cook County, Illinois recorder's office. JGSM then brought this action in the Eighth Judicial District Court in Nevada and alleged eleven causes of action against TWG and Wackman including both contract and tort claims. TWG subsequently removed the action to this court.

II. Analysis

    A. Personal Jurisdiction

        1. Legal Standard

The plaintiff bears the burden of demonstrating personal jurisdiction over each defendant. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). The Court first looks to federal statute to determine whether personal jurisdiction exists. See Gator.com Corp. v. L.L. Bean, Inc., 314 F.3d 1072, 1076 (9th Cir. 2003). Absent a federal statute, the Court

must determine (1) whether the state's long-arm statute has been satisfied and (2) whether the exercise of personal jurisdiction is consistent with the notions of due process. Trump v. Eighth Judicial Dist. Court, 857 P.2d 740, 747 (Nev. 1993). Nevada's long arm statute authorizes personal jurisdiction so long as such jurisdiction is "not inconsistent with the Constitution." See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 415 (9th Cir. 1977); N.R.S. 14.065.

When, as here, the defendant's motion to dismiss is based on declarations and written discovery, "the plaintiff need only make a prima facie showing of jurisdictional facts to defeat the defendant's motion." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Data Disk, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977) ("if a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss."). The Court accepts uncontroverted factual allegations as true and must resolve disputed facts in the plaintiff's favor. See Schwarzenegger, 374 F.3d at 800.

Personal jurisdiction is appropriate when the defendant engages in sufficient contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). These requirements "give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The strength of the defendant's contacts with the forum determine whether that defendant is subject to general or specific jurisdiction. Boschetto v. Hansing, 529 F.3d 1011, 1016 (9th Cir.

2008). General jurisdiction exists where there are "substantial" or "continuous and systematic" contacts with the forum state such that jurisdiction would be appropriate regardless of whether the defendant's conduct occurred in the forum. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Specific jurisdiction, on the other hand, is appropriate where "the case arises out of certain forum-related acts." Id. The touchstone of personal jurisdiction is "purposeful availment of the forum, which ensures that defendants are not "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

### 2. The Court has Personal Jurisdiction over Wackman

As a preliminary matter, the Court addresses Wackman's argument that his proffered declarations and text messages sufficiently contravene JGSM's sworn declarations such that the Court need not accept JGSM's declarations as true. At the motion to dismiss stage, the Court accepts plaintiff's version of the facts as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in the [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). The Court may disregard the plaintiff's sworn declarations only when they are "directly contravened." Id.

Here, the parties' declarations disagree as to whether the nature of their 2015 meeting was business or pleasure. To bolster his declaration that the 2015 meeting was pleasure not business, Wackman submitted text messages between himself and Mugnier that show Mugnier was in Chicago and in communication with Wackman in 2015 and 2016. The competing declarations demonstrate a mere factual dispute. And Wackman's unauthenticated text messages

only show that Mugnier was in Chicago at various times in 2015 and 2016 and that he communicated with Wackman while he was there. The text messages do not foreclose the possibility that the parties met in Las Vegas to negotiate the agreement as JGSM has alleged. Accordingly, the Court finds that Wackman has not "directly contravened" JGSM's allegations of personal jurisdiction and will resolve factual disputes in its favor.

### a. Wackman's Contacts with Nevada

Next, the Court turns to whether Wackman has sufficient contacts with Nevada for the Court to exercise jurisdiction over him. [2] The parties agree that Wackman's contacts with Nevada are not so "continuous and systematic" to support general personal jurisdiction. The question then, is whether Wackman purposefully availed himself of the laws and benefits of Nevada through his contacts with the state.

The Court applies a three-part test to determine whether a defendant's contacts with the forum are sufficient to confer personal jurisdiction:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs of the test. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011). If the

---

[2] Wackman contends that he is not subject to personal jurisdiction in Nevada individually because he was acting on behalf of TWG. Wackman correctly argues that he cannot be subject to jurisdiction solely because he is a member of a Nevada limited liability company. However, the question boils down to whether Wackman—as an individual—would reasonably anticipate being haled into court in Nevada. See World-Wide Volkswagen, 444 U.S. at 296. As the sole shareholder of the TWG, Wackman is the one who initiated contact with JGSM, he was aware of any agreement between the parties, and he accepted JGSM's investment. Therefore, in this dispute, it is reasonable that Wackman would anticipate being haled into court in Nevada.

plaintiff succeeds, the burden shifts to the defendant to make a "compelling case" that jurisdiction would be unreasonable. Id.

### i. Purposeful Availment and Purposeful Direction

Although purposeful availment and purposeful direction are often conflated, they are two distinct concepts. Pebble Beach Co. v. Caddy 453 F.3d 1151, 1155 (9th Cir. 2006). Whether the Court analyzes purposeful direction or availment depends upon the plaintiff's claim; purposeful availment is for contract claims while purposeful direction is for tort claims. Id.; Schwarzenegger, 374 F.3d at 802. When the plaintiff brings both contract and tort claims, the plaintiff must only demonstrate personal jurisdiction on one claim because the Court may exercise pendent jurisdiction over the additional claims so long as they arise out of a common nucleus of operative fact. See Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004). Although JGSM brings both tort and contract claims, they each arise out of the breach of an alleged oral agreement between the parties. Accordingly, the Court will have jurisdiction if Wackman purposefully availed himself of Nevada.

A defendant avails itself of the forum when it exercises the privilege of conducting its business activities in the forum state. Hanson v. Denckla, 357 U.S. 235, 253 (1958). By so doing the defendant takes advantage of benefits of the state and enjoys the protection of its laws. Id. A contract between a defendant and a resident of the forum—without more—is insufficient to confer personal jurisdiction. Boschetto, 539 F.3d at 1017. But participating in contract negotiations in the forum does constitute purposeful availment of a forum. See Data Disk, 557 F.2d at 1287–88 ("By participating in the contract negotiations in [the forum, the defendant] purposefully availed itself of the privilege of carrying out activities in that state.").

Wackman availed himself of the benefits of doing business in Nevada in 2015. According

to JGSM, Wackman initiated contact with Nevada residents who had experience in the hospitality and night life industry. He then traveled to Las Vegas to solicit investments from Nevada residents. During Wackman's stay in September 2015, he negotiated an investment agreement for the Ontario Street project. After JGSM invested, TWG, through Wackman, agreed to share management responsibilities and eventual profits from the club. These facts suggest that Wackman availed himself of the benefits of doing business in Nevada.

Wackman denies the Fall 2015 meeting and claims his only contacts with Nevada arise through contacts with people who happen to be Nevada residents. In support, Wackman points to Picot v. Weston, 780 F.3d 1206 (9th Cir. 2015). Wackman's reliance on Picot, however, is unavailing.

In Picot, the Ninth Circuit analyzed whether a California district court had personal jurisdiction over a Michigan resident arising out of a contract with a California plaintiff. There, the plaintiff traveled to Michigan to meet with the defendant who lived and worked there. Id. at 1209. While in Michigan, the parties negotiated an agreement wherein the defendant would research and develop "hydrogen technology" for future sale. Id. The defendant used his lab in Michigan to develop the product. Aside from his interaction with the plaintiff, the defendant's only contacts with California were two trips to help the plaintiff demonstrate the product to prospective buyers. Id. at 1210. Neither trip was contemplated in the original agreement, and both were at the plaintiff's request. Ultimately, the Court determined that those two trips to California were not sufficient contacts between the defendant and California to confer personal jurisdiction. Id. at 1213.

This case is different. Whereas the Picot defendant negotiated the contract in Michigan, performed the contract in Michigan, and traveled to California only at the plaintiff's request to

demonstrate the product, here, JGSM alleges that Wackman sought out Nevada residents due to their experience with the Las Vegas hospitality and nightlife industry. He traveled to Las Vegas, met with the Plaintiff in Las Vegas, and negotiated the alleged agreement in Las Vegas. Then, Wackman formed a Nevada limited liability company to facilitate that investment agreement. Taking these facts in the light most favorable JGSM, Wackman's contacts with Nevada are far more intentional and directed at the forum state than those in Picot. Accordingly, the Court finds that Wackman availed himself of the privileges and benefits of doing business in Nevada.

### ii. Forum Related Activities

The second prong of the test is whether plaintiff's claim arises out of activity conducted in the forum state. Schwarzenegger, 374 F.3d at 802. The mere existence of a contract between the defendant and a resident of the forum state is not enough. Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991). Rather, the Court examines the "continuing relationships and obligations with citizens of the [forum]." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). The Court also considers the circumstances surrounding formation of the contract including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. at 479.

JGSM's declarations claim that Wackman's connections to Nevada are more significant than just the alleged agreement. Wackman solicited investments from Nevada residents with institutional knowledge by virtue of their experience with Las Vegas nightlife. He then voluntarily traveled to Las Vegas to meet with JGSM. The meeting took place at a restaurant in Las Vegas. During the meeting, the parties negotiated lending for the Ontario Street project and discussed the requirements to form a Nevada limited liability company. Wackman then formed the company in Nevada to facilitate the parties' capital contributions for the project. Wackman's

contacts extended beyond a mere contract with Nevada residents. Accordingly, JGSM's claims arise out of Wackman's activities in Nevada.

### iii. Reasonableness

The final prong of the analysis shifts the burden to Wackman to present a "compelling case" that jurisdiction in Nevada would be unreasonable. <u>Schwarzenegger</u>, 374 F.3d at 802. This is a high bar because there is a "presumption of reasonableness" once a plaintiff has satisfied the first two elements of the test. <u>See</u> <u>Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.</u>, 784 F.2d 1392, 1397 (9th Cir. 1986). The Court looks to seven factors to determine whether personal jurisdiction is reasonable:

> (1) the extent of the defendant's purposeful interjection into the affairs of the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

<u>CE Distribution, LLC v. New Sensor Corp.</u>, 380 F.3d 1107, 1112 (9th Cir. 2004). Because the factors do not overwhelmingly favor Wackman, jurisdiction is reasonable.

Factor one favors JGSM and jurisdiction. Wackman interjected himself into the forum when he sought out investments from Nevada residents and traveled to Las Vegas to negotiate capital contributions for the Ontario Street project. He then established a Nevada company to facilitate those contributions and manage the renovations.

Factor two also favors jurisdiction. Wackman claims it would be a substantial burden to litigate in Nevada because he is a citizen of Wisconsin, and the Ontario Street property is in Illinois. He also contends that it would be unreasonable to require witnesses to travel to the Nevada. Although Wackman does not live in Nevada, he is the sole shareholder of TWG

Management over which the Court undoubtedly has personal jurisdiction. As the sole shareholder, Wackman will be intricately involved with this litigation in Nevada regardless of whether the Court has jurisdiction over him personally. Thus, despite the witnesses and property being located in Illinois, Wackman would expect to litigate in Nevada where his business is already litigating.

Factor three favors jurisdiction because there does not appear to be any conflict between the states in adjudicating this dispute.

Factor four leans in favor of jurisdiction. Nevada has a "substantial interest" in adjudicating the dispute of its residents. See CE Distribution, 380 F.3d at 1112 ("The forum state has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another."). JGSM has alleged both breach of contract and tort claims against TWG and Wackman. Thus, Nevada has an interest in adjudicating this case.

Factor five tilts toward Wackman. JGSM argues that Wackman targeted Nevada and traveled there to negotiate a contract to renovate the Ontario Street property. While the contract negotiations and subsequent formation of a Nevada limited liability company form the basis of the court's personal jurisdiction over Wackman, the failure to renovate the property under the agreement is at the center of the dispute. As a result, many of the witnesses and documents are located in Illinois or Wisconsin, which may make either a more efficient forum.

Factor six favors jurisdiction. Although "not of paramount importance," the plaintiff's decision to litigate in its home forum is "obviously most convenient." Harris Rutsky, 328 F.3d at 1133.

Factor seven favors Wackman. Wackman proposes the Northern District of Illinois as an alternative forum because the Ontario Street property is located in that district, Wackman lives in

11

Wisconsin and does business in that district, and the witnesses are closer to that district. Additionally, personal jurisdiction over Wackman in that forum is likely.

Although factors five and seven favor Wackman, the majority of the factors support jurisdiction in Nevada. Accordingly, the Court finds that personal jurisdiction over Wackman in Nevada is reasonable and denies Wackman's motion to dismiss for lack of personal jurisdiction.

### B. Venue

The Court now turns to the defendants' motions to dismiss for improper venue, or in the alternative, to transfer venue (#4, #30). In his motion to dismiss (#30), Wackman "joins in and adopts the arguments TWG asserted in its motion to dismiss for improper venue (#4)." TWG's motion boils down to two main arguments. First, it argues venue in Nevada is improper under 28 U.S.C. § 1391, which warrants dismissal. However, § 1391 does not apply here because TWG removed this action from state court. See Polizzi v. Cowles Magazines, Inc., 345 U.S. at 666 (the proper venue for a removed action is the district court "embracing" the state court). The District Court for the District of Nevada embraces the Eighth Judicial District Court making it the proper venue for this case. Therefore, the Court denies Wackman's motion to dismiss for improper venue.

Next, TWG argues that the Court should transfer the action under 28 U.S.C. § 1404 for convenience of the parties. It claims this suit could have been brought in the Eastern District of Wisconsin or the Northern District of Illinois and that either venue would be substantially more convenient for the parties. Upon review of the necessary factors for transfer, the Court finds that Wackman has not made the "strong showing" necessary to transfer venue.

1. Legal Standard

Even if venue is proper, the Court may transfer the action to another venue "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404. Eligible transferee venues include "any other district or division where [the case] might have been brought." Id.[3] Generally, a plaintiff's choice of forum receives deference from the district court. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986). However, the Court may transfer venue to an alternate forum when the defendant makes a strong showing of inconvenience. Id. at 843. The alternate forum must be "more convenient . . . [not] equally convenient or inconvenient." Van Dusen v. Barrack, 376 U.S. 612, 646 (1964).

Whether to transfer venue is left to the court's sound discretion. See King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992). The Court weighs multiple factors to determine whether transfer is appropriate:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000). A forum selection clause is also a "significant factor" in the analysis. Id. Moreover, the Court will not upset the plaintiff's choice of forum absent a "strong showing" of inconvenience. Decker Coal, 805 F.2d at 843.

---

[3] The parties agree that JGSM could have filed this case in at least one of TWG's preferred forums—the Eastern District of Wisconsin. Thus, the sole remaining question is whether TWG has made the strong showing that the Eastern District of Wisconsin would be more convenient than continuing in JGSM's selected forum.

13

### 2. Venue is Proper in Nevada

Much of TWG's and Wackman's arguments against venue in Nevada boil down to a dispute over where the majority of the events leading to this action originated. As previously discussed, JGSM alleges that the actions leading to this suit occurred in Las Vegas. It claims TWG—through Wackman—sought out Nevada residents with extensive experience in the hospitality and nightlife industry. Once Wackman contacted these Nevada residents, he traveled to Las Vegas to negotiate an investment agreement and formed a Nevada limited liability company to facilitate the agreement. Wackman and TWG, on the other hand, argue that any negotiations happened in Wisconsin or Illinois and that those forums would be more convenient.

#### 1) Location of the Negotiations

JGSM submitted declarations supporting its assertion that the location of the negotiations underlying the parties' alleged agreement took place in Nevada. Contract negotiations in Nevada are strong evidence against transfer. However, even absent the Nevada negotiations, this factor would not favor transfer; at best it would be equal. Without the Las Vegas meeting, any negotiations between the parties happened by phone and email—JGSM in Nevada and Wackman in Wisconsin or Illinois. In essence, each party negotiated in their own forum. Therefore, this factor does not weigh in favor transfer.

#### 2) Familiarity with State Law

The parties dispute whether Nevada or Illinois law applies to ten of the eleven causes of action. The eleventh arises out of Nevada's deceptive trade practice act (N.R.S. § 598.095–0925). It is unclear whether Nevada law would apply to the other causes of action because the parties dispute where the agreement was formed.[4] At bottom, the deceptive trade practices claim

---

[4] At this point, neither TWG nor Wackman have moved the court to make a choice of law

14

will require the Court to apply Nevada law. A Nevada court will be more familiar with Nevada law than a Wisconsin or Illinois court. Therefore, this factor weighs against transfer.

### 3) Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally entitled to considerable weight unless the forum has "no interest in the parties or subject matter." Lou v. Beizberg, 834 F.2d 730, 739 (9th Cir. 1987). As discussed, Nevada has an interest in adjudicating the disputes of its residents. Accordingly, this factor weighs against transfer.

### 4) Parties' Contacts with the Forum

Contrary to Wackman's arguments, this Court has personal jurisdiction over him due to his contacts with Nevada. Further, this dispute arises out of the agreement that was allegedly negotiated in the forum. Therefore, this factor weighs against transfer.

### 5) Connection Between Forum and JGSM's Claims

JGSM is located in Nevada. TWG is a Nevada limited liability company. This action arises out of an agreement that was allegedly formed in Nevada. Though the performance of the agreement would occur in Nevada and Illinois, the breach of the agreement arises out of the parties' contacts with Nevada. Therefore, this factor weighs against transfer.

### 6) Cost of Litigation

The evidence and witnesses that will be summoned to court are split between Nevada and the Midwest. Despite the modern convenience of travel and technological advances, it will likely be more expensive to litigate in Nevada than in the Midwest. Therefore, this factor favors transfer.

---

determination for the remaining causes of action. The Court will not make that determination here.

7) Availability of Compulsory Process

The defendants concede that this factor has less bearing on transfer. TWG and Wackman claim that because certain witnesses live outside of Nevada, it would be more efficient to transfer venue to Wisconsin or Illinois. There are no allegations, however, that the defendants' non-party witnesses would refuse to cooperate with litigation in Nevada or that compulsory process would be necessary. In addition, transferring venue for the defendants' convenience merely shifts the burden to JGSM who has chosen Nevada as its forum. Therefore, this factor does not favor transfer.

8) Ease of Access to Proof

Finally, litigating in Nevada would not hinder the parties' access to the evidence in this case. Admittedly, certain evidence is closer to the defendants' preferred forums than to Nevada. However, that will not outweigh JGSM's choice to litigate in Nevada.

The majority of the Jones factors weigh against transferring this case to Illinois or Wisconsin. The only factor that favors transfer—the cost of litigation—does not present a strong showing of inconvenience on its own. And transferring this case would merely shift the inconvenience from one party to the other. Therefore, the Court finds that venue is proper in Nevada and denies the defendants' motion to transfer.

III. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant TWG Management, LLC's Motion to Dismiss for Improper Venue, or, in the Alternative, to Transfer Venue (#4) is **DENIED**;

IT IS FURTHER ORDERED that Defendant Tom Wackman's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (#30) is **DENIED**;

IT IS FURTHER ORDERED that Defendant TWG Management, LLC's Motion to Extend Time (First Request) to Reply in Support of Motion to Dismiss (#12) is **GRANTED**; and Plaintiff JGSM Entertainment Corp.'s Motion to Strike Reply (#21) is **DENIED as moot**.

Dated this 21st day of August, 2018.

_____
Kent J. Dawson
United States District Judge